Jeffrey L. Hartman, Esq. #1607
**HARTMAN & HARTMAN**
510 West Plumb Lane, Suite B                    **E- Filed 2/18/2011**
Reno, Nevada 89509
Telephone: (775) 324-2800
Facsimile: (775) 324-1818
E-mail: notices@bankruptcyreno.com

Attorney for Debtor

### UNITED STATES BANKRUPTCY COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| IN RE: | CASE NO. BK-N-10-54172-GWZ<br>CHAPTER     11 |
| MT3 PARTNERS, LLC, | |
| Debtor. | **DISCLOSURE STATEMENT (PROPOSED) AND SUMMARY OF PLAN OF REORGANIZATION** |
| | **Hearing Date:   April 28, 2011<br>Hearing Time:  2:00 p.m.** |
| _____/ | |

MT3 Partners, LLC, ("MT3" or "Debtor") has prepared and provides this **proposed**
Disclosure Statement, (the "Disclosure Statement") including a summary of the Plan of
Reorganization ("Plan"), to all of its known creditors and other parties-in-interest, pursuant
to 11 U.S.C. § 1125.  **NOTE: THIS DISCLOSURE STATEMENT IS PROPOSED,
HAS NOT YET BEEN APPROVED BY THE COURT, AND IS NOT FOR THE
PURPOSE OF SOLICITING VOTES.**

I.      **INTRODUCTION**

The purpose of this Disclosure Statement is to provide information which is material,
important and necessary for Debtor's creditors to make a reasonably informed decisions to
vote to accept or reject its proposed  Plan.  The essential terms of the Plan are set forth at
Section VIII of this Disclosure Statement.  Debtor has provided the information contained in
this Disclosure Statement and believes it to be reliable.

ALL CREDITORS AND OTHER PARTIES-IN-INTEREST SHOULD
CAREFULLY REVIEW THE PLAN AND DISCLOSURE STATEMENT, AND, BASED
ON THEIR INDEPENDENT EVALUATION AND JUDGMENT, DETERMINE

WHETHER OR NOT ACCEPTANCE OF THE PLAN IS APPROPRIATE. IN DETERMINING WHETHER A PLAN OF REORGANIZATION HAS BEEN ACCEPTED BY A MAJORITY OF THE CREDITORS AND EQUITY SECURITY HOLDERS, ONLY THOSE CREDITORS AND EQUITY SECURITY HOLDERS WHO ACTUALLY VOTE ON THE PLAN ARE COUNTED.

THIS DISCLOSURE STATEMENT, INCLUDING THE EXHIBITS TO THE DISCLOSURE STATEMENT, SHOULD BE READ IN THEIR ENTIRETY. THE DESCRIPTION OF THE PLAN CONTAINED HEREIN IS A SUMMARY ONLY AND IS QUALIFIED BY REFERENCE TO THE TERMS AND CONDITIONS OF THE PLAN ITSELF. **NO REPRESENTATIONS CONCERNING DEBTOR OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT ARE AUTHORIZED.**

## II.    DEFINED TERMS

Whenever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter. Any capitalized term not defined herein that is defined in the Bankruptcy Code shall have the meaning ascribed to it in the Bankruptcy Code. Unless the context requires otherwise, the following words and phrases shall have the meanings set forth below when used in this Disclosure Statement and in the Plan:

Administrative Claim: Collectively, (a) any cost or expense of administration of the Chapter 11 case allowed under Section 503(b), 507(a)(1) or 507(b) of the Bankruptcy Code, and (b) any fees or charges assessed against the Debtor's estate under 28 U.S.C. § 1930.

Allowed Administrative Claim:   An Administrative Claim that has been approved after application, notice and hearing, and final order of the Bankruptcy Court.

Allowed: With respect to Claims and Interests, (a) any Claim against, or Interest in, the Debtor, proof of which is timely filed, or by order of the Bankruptcy Court is not or will not be required to be filed, (b) any Claim or Interest that has been or is hereafter listed in the schedules of liabilities filed by the Debtor as liquidated in amount and not disputed or

contingent or (c) any Claim allowed pursuant to this Plan; and, in each such case in (a) and (b) above, as to which either (i) no objection to the allowance thereof has been interposed within the applicable period of time fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court or (ii) such an objection is so interposed and the Claim or Interest shall have been allowed by a Final Order (but only to the extent so allowed).  Unless otherwise specified, an "Allowed" claim shall not include (i) interest accrued after the Filing Date, (ii) punitive damages or (iii) any fine, penalty or forfeiture.

Allowed Secured Claim: A Claim that is Allowed, which is (a) secured by a perfected  security interest in property owned by the Debtor; and (b) limited in accordance with § 506 (a) of the Bankruptcy Code to the value of the creditor's interest in the estate's interest in such property.

Ballot Date: The date, to be determined by the Court, on which votes in favor of or against the Plan will be required to be submitted.

Bankruptcy Code (or "Code"): The Bankruptcy Code of 1978, as codified in Title 11 of the United States Bankruptcy Code by Public Law 95-598, including all subsequent amendments thereof.

Bankruptcy Court: The United States Bankruptcy Court for the District of Nevada, Reno, or such other court as has jurisdiction of this Chapter 11 case.

Claim: Any right to (a) payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) an equitable remedy for breach of performance if such breach gives rise to a right to payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

Confirmation Date: The date on which the Court enters the Confirmation Order on the Plan.

Confirmation Order: The order of the Bankruptcy Court confirming this Plan or any subsequent amended Plan.

<u>Debtor</u>:  MT3 Partners, LLC.

<u>Effective Date</u>:  This term shall mean the date which is the first day of the next month at least 30 days following the Confirmation Date.

<u>Final Order</u>: An order, judgment, ruling or decree issued by the Bankruptcy Court, or other court having jurisdiction of the same, that has not been reversed, stayed, modified or amended, and as to which the time to appeal has expired, and as to which no appeal, re-argument, petition for certiorari, or if an appeal, re- argument, petition for certiorari, or rehearing thereof has been denied, the time to take any further appeal or seek certiorari or further re-argument or rehearing has expired.

<u>Notice and Hearing</u>: Notice of hearing as set forth in Rule 2002 of the Federal Rules of Bankruptcy Procedure, and hearing before the Bankruptcy Court.

<u>Petition Filing Date</u>:  October 22, 2010, the date on which Debtor filed its voluntary petition commencing its Chapter 11 case.

<u>Post-Confirmation</u>:   Any period of time after the Confirmation Date.

<u>Priority Claim</u>: Any Claim which is entitled to priority in payment under Section 507(a) of the Bankruptcy Code.

<u>Secured Claim</u>:   Any Claim that is a secured Claim against the Debtor held by any entity, including a judgment creditor of the Debtor, to the extent of the value, as determined either by the Bankruptcy Court pursuant to Section 506(a) of the Bankruptcy Code or as otherwise provided in the Plan, of any interest in the property of the estate securing such Claim.  Secured claims include interest, attorney's fees and expenses to the extent allowed under Section 506(b) of the Bankruptcy Code.

<u>Revesting of Property</u>.   Upon confirmation of the Plan, except as set forth herein all property of the estate shall be re-vested in the Debtor which shall retain such property free and clear of all claims and interests of the creditors, except as set forth in this Plan.

<u>Unsecured Claim</u>:  Any Allowed Claim that is not a Secured Claim, Administrative Expense Claim or Priority Claim.

///

III.    **INFORMATION REGARDING THE DEBTOR**

A. **Ownership Structure**

MT3 Partners, LLC is a Nevada limited liability company formed in 2005. The membership interests are owned equally by Mark Kubinski ("Kubinski") and Tami Topol ("Topol"). They are co-managing members.

Kubinski and Topol, together, have several decades of experience in entitlement, management and development of land, residential and commercial properties. Kubinski and Topol are based in Reno and most of their focus has been in the Reno-Tahoe region over the past 20 years. They have successfully completed projects in Washoe County dealing with some of the most difficult regulatory commissions in the nation. Their experience includes complex land acquisition and assemblage, successfully working through difficult entitlement processes, as well as constructing and managing complex properties. Both principals are well connected in the development community and bring a unique ability to seek and attract the most qualified land planners, architects, engineers, general contractors and property managers in order to ensure the success of their projects.

B. **History of the Debtor and Events Leading To The Filing of the Chapter 11 Case**

MT3 is the fee title owner of nine separate parcels of real property located in the South Meadows - Double Diamond area of Reno, Nevada. More specifically, the parcels are located in the northeast quadrant of the intersection of South Meadows Parkway and Double R Boulevard. The overall development project is referred to as 'Boulevard South' and is a 16.2 acre, mixed use project consisting of 9 separate parcels that were acquired during 2006 and 2007.

The Debtor acquired the parcels in the following order:

| | |
|---|---|
| APN 163-050-19 | acquired 7/14/2006 |
| APN 163-050-20 and 163-050-28 | acquired 9/9/2006 |
| APN 163-050-14 | acquired 10/20/2006 |

| | |
|---|---|
| APN 163-050-24 and 163-050-25 | acquired 1/29/2007 |
| APN 163-050-27 | acquired 1/29/2007 |
| APN 163-050-22 | acquired 3/27/2007 |
| APN 163-050-23 | acquired 1/29/2007 |

There were approximately 9 separate secured lenders who made either the acquisition loans or refinanced the various separate projects within Boulevard South.

**Entitlement Process**

During the various approval stages, Boulevard South received unanimous support and approval from the City of Reno, the Neighborhood Advisory Board, the Planning Commission and City Council.

After the parcels were assembled, an application was submitted to the City of Reno to amend the PUD to allow for the mixed-use project. On April 10, 2008 Boulevard South was approved and the PUD was amended to allow for 1,726 residential units, 140,000 square feet of commercial space and heights up to 360 feet. Due to changes in the marketplace, MT3 changed the use of the project and on May 27, 2009 an amendment to the PUD to allow for Senior Housing was approved. Memory Care, Bordeaux I and Bordeaux II are a result of the amended PUD. There were many boundary lines adjustments to the various parcels after the acquisitions.

The mixed-used development consists of the following seven components to be constructed in the following order:

**Bordeaux Memory Care**:

This initial phase is fully entitled with all governmental approvals. The 50 unit Memory Care building has been fully designed with floor plans and elevations and approved by MT3's senior housing management company and MT3 is planning to start the working drawings in mid 2011with a completion date set for August-September 2011.

**Bordeaux I :**

Bordeaux I, LLC is an existing Nevada limited liability company the membership of which is owned by equally by Kubinski and Topol. Bordeaux I is a single purpose entity

1    established in contemplation of the equity funding commitment from Resolute Capital

2    Partners ("RCP") to Bordeaux Communities, LLC.

3        This phase, also fully entitled, includes 192 senior assisted living units. The 192

4    assisted units have been fully designed, with completed working drawings, and is ready to

5    'break ground' immediately.  Bordeaux I, LLC is a party to an agreement with Renown

6    South Meadows Medical Center ("Renown").  Renown includes a separate wing originally

7    designed for senior assisted living.   The component of the operations is referred to as

8    Monaco Ridge Assisted Living Facility ("Facility").  The senior 'population' at the Facility

9    is approximately 40 individuals.  The contract provides that Bordeaux can acquire the

10   Facility for $315,000.  Upon completion of the Bordeaux I units, the seniors will be moved

11   from Monaco Ridge, at their election, to the Bordeaux I property.  As part of the funding by

12   Bordeaux Communities LLC, Bordeaux I will assign Bordeaux Communities, LLC its rights

13   under the agreement with Renown.

14       **Bordeaux II:**

15       This phase is fully entitled for a 142 unit independent living facility with working

16   drawings about 30% complete.  Standard design review will be required prior to submitting

17   a request for a building permit.

18       **Starwood Hotel**

19       MT3 is a party to a license agreement with Starwood Four Points By Sheraton

20   ("Starwood").  The Starwood site is fully entitled and plans are partially complete; plans

21   will be completed prior to submitting for permit, pending funding.

22       **Casitas and Restaurant**

23       These components are fully entitled and plans are 10% complete; plans will be

24   completed prior to submitting for permit, pending funding.

25       **Tech Campus I**

26       This component is fully entitled and plans are 20% complete; plans will be

27   completed prior to submitting for permit, pending funding.

28   ///

**Tech Campus II**

The component is also fully entitled however, no plans have been drawn at this time and will require standard design and review approval from the City.

**IV.    POST PETITION EVENTS**

**Retention of Professionals:** Debtor engaged Hartman & Hartman as Debtor's counsel. Kubinski paid an initial retainer to Hartman & Hartman and Kubinski and Topol have agreed to be responsible for Hartman & Hartman's fees and costs in the event the Debtor does not have the ability to pay fees during the course of this Chapter 11 case.

**Schedules and Statements**

Schedules of Assets and Liabilities and the Statement of Financial  Affairs were filed on November 5, 2010.  Amendments are to be filed no later than February 25, 2011.

**Litigation:**

As of the Petition Date, there was one lawsuit pending, <u>Aloiau Architecture v. MT3 Partners, LLC</u>., case no. CV10 02969, Second Judicial District Court, Washoe County, Nevada.  The civil action is a complaint to foreclose a mechanics' lien and to recover damages.  The Debtor scheduled an unsecured obligation to Aloiau in the amount of approximately $80,000.

**Post Petition Financing**

Discussed in greater detail below, MT3 is pursuing two forms of financing.  The initial borrowing, subject to Court approval, will be for $300,000 to be utilized for the completion of certain engineering and architectural plans and specifications.  The second financing concerns the phased implementation of the entire Boulevard South project and is discussed in detail in the following Section.

**V.    MEANS FOR IMPLEMENTATION OF PLAN**

In the current economic downturn, real estate projects such as Boulevard South have no access to conventional financing and investor capital is not generally available.  Nevada in general, and Washoe County, in particular, have been particularly impacted and there are few, if any major construction projects currently in process.

**United States Customs and Immigration**

Following is a summary of what will be referred to herein as the EB-5 Program:

In the Immigration Act of 1990, Congress created the employment-based fifth preference (EB-5) immigrant visa category for immigrants who invest in and manage U.S. companies that benefit the U.S. economy and create or save at least 10 full-time jobs for U.S. workers. Under the program, foreign nationals may obtain a conditional green card visa if they invest $1 million, although that amount is reduced to $500,000 if the investment is made in a high unemployment area or rural region. The "conditional" green card good for two years. At the end of that time they must prove that they have maintained their investment and have created or saved at least 10 jobs before their conditional status will be removed and they become regular green card holders.  The law allows up to 10,000 foreign investors a year to qualify under the EB-5 program.

In November 2003 Congress signaled its continued interest in the EB-5 program by passing a five-year extension of the EB-5 regional center pilot program. The EB-5 program has been extended an additional five years. This subset of the EB-5 program allows the government to set aside up to 3,000 of the 10,000 EB-5 green cards each year for investors who invest in designated governmental or private regional centers. EB-5 petitions filed through regional centers only have to show indirect, not direct, job creation. This makes it easier to attract foreign investors. Individuals receiving the visas are not required to actively manage the business in which the investment is made.

A regional center is defined by any economic unit, public or private, engaged in the promotion of economic growth improved regional activity, job creation and

1    increased domestic capital investment.[1]

2    **Sierra Nevada Regional Center**

3    Sierra Nevada Regional Center ("SNRC") is in the process of obtaining approval

4 from the United States Customs and Immigration Service ("USCIS") for the geographical

5 areas which includes Washoe County.  Once approved, SNRC will be able to attract

6 investment capital for Northern Nevada from foreigners seeking EB-5 visas ind investment

7 opportunities.  Boulevard South is the first project, conditionally approved for funding by

8 SNRC.

9    **Status of SNRC Application**

10    SNRC submitted its regional center application in early November 2010.  Average

11 processing time is approximately 4-6 months.  SNRC is expects to have USCIS approval no

12 later than July 2011.[2]

13    **Government, Industry and Community Support**

14    SNRC has full support from the following:

15    United States Senator Harry Reid; United States Congressman Dean Heller; (former)

16 Governor Gibbons, Nevada; Senate Majority Leader Raggio (Ret.); Richard Bartholet,

17 Director of Research, Bureau of Business & Economic Research/Center For Regional

18 Studies, University of Nevada Reno; Maria Sheehan, President Truckee Meadows

19 Community College; Heath Morrison, Superintendent of Schools, Washoe County; Nevada

20 Commission on Economic Development; Southwest Regional Council of Carpenters;

21 George and Greg Peek, President and Vice President, ERGS, Inc;, and the Nevada Center

22 for Entrepreneurship and Technology.  **Exhibit A.**

23    **SNRC Funding Commitment**

24    The equity funder for the Boulevard South development is Resolute Capital Partners

25

26

27    [1]  See, www.uscis.gov/portalsite/

28    [2]  Tom Powell, the principal of SNRC, is also a principal in ELP which has a secured
debt position against properties owned by MT3.

1   ("RCP").  RCP will fund Bordeaux Communities, LLC ("Bordeaux").[3]  See,

2   www.bordeauxcommunities.com.  A copy of the RCP Commitment Letter is attached as

3   **Exhibit B.**

4            It is anticipated that Bordeaux will fund MT3 on the following schedule:

5            January 3, 2012              $19,318,132
             March 31, 2012                16,281,854
6            June 30, 2012                  7,965,671
             September 30, 2012             8,161,382
7                                         $51,727,039

8            **<u>Transaction Structure</u>**

9            The equity funding commitment from RCP to Bordeaux requires that, in order to

10  receive funding, each phase or project within Boulevard South be a single purpose entity

11  ("SPE").  This means that each SPE shall not engage in any other business, shall not own or

12  hold any other assets, shall not incur any other debt, shall not guaranty any other

13  obligations, shall not pledge the assets of the project and shall comply with all requirements

14  in the funding documentation.

15           For example, under the structure contemplated, at the time of the first phase of

16  funding, title to the Memory Care project of 50 units will be transferred to Memory Care,

17  LLC. and the ELP Note A will be paid in full and the ELP  Deed of Trust A will be

18  reconveyed.  Memory Care, LLC will then be in a position to grant Bordeaux a senior

19  secured position on the construction loan.

20           The initial funding of $20,593,974 includes an interest reserve of $1,300,000 from

21  which monthly payments of interest will be paid commencing January 2012 as specified in

22  the Plan.

23  ///

24  ///

25  ///

26  ///

27  _____

28      [3]  Bordeaux Communities, LLC is a Nevada limited liability company.  Mark Kubinski and
    Tami Topol each own 25% of the membership interest and SNRC owns the remaining 50% interest.
    Mark Kubinski is the managing member of Bordeaux.

## VI.    ASSETS AND LIABILITIES

### Asset Valuations

The appraised values for the parcels are:

| | |
|---|---|
| 6.84 acres | $26,500,000 |
| 5.18 acres | 18,000,000 |
| 3.79 acres | 7,318,000 |
| .41 acres | 82,000 |
| 16.22 acres | $51,650,000 |

These values are based upon appraisals by Johnson Perkins.  In addition to the real property, MT3 owns the architectural and engineering plans and specifications, the entitlements and all intangible personal property prepared and produced in connection the governmental planning process.

### Secured Liabilities

The debt structure for the various parcels of property is as follows:

#### Nevada State Bank

Nevada State Bank ("NSB") is the payee on a promissory note dated March 22, 2007, in the original amount of $7,350,000 ("NSB Note").  Repayment of the NSB Note is secured by a deed of trust dated March 22, 2007 and recorded with the Washoe County recorder as document 3512251 on the same date ("NSB Deed of Trust").  The term of the loan was one year with a maturity date of October 5, 2008.  The initial interest rate on the NSB Note was 9.750% and subject to change based upon the prime rate index as described in the NSB Note, plus 1.5%.  The default rate of interest on the NSB Note is an additional 3%.  The NSB Note is personally guaranteed by Kubinski and Topol.

The NSB Deed of Trust is a first deed of trust by recording date encumbering APNs 163-050-24, 163-050-25,  163-050-26, 163-050-27 and 163-050-28.  The acreage of these parcels totals 6.84 and the Debtor has scheduled the value of those parcels at $26,250,000.

#### ELP Capital Loan A

Equity Lending Partners Capital ("ELP") is the original payee on a promissory note

dated January 26, 2007 in the original amount of $ 6,150,000 ("ELP Note A").   Interest

accrues on the ELP Note A at 11.5%.  13Repayment of the ELP Note A is secured by a

deed of trust dated January 29, 2007, recorded with the Washoe County recorder as

document 3491778 on the same date ("ELP Deed of Trust A").   The ELP Deed of Trust A

is a first deed of trust by recording date encumbering APNs 163-050-14 and 163-050-19.

These two parcels total 5.18 acres and the Debtor has scheduled the value of those parcels at

$18,000,000.

### ELP Capital Loan B

ELP is the original payee on a promissory note dated June 28, 2007 in the original

amount of $6,060,000 ("ELP Note B").   Repayment of the ELP Note B is secured by a

deed of trust dated June 29, 2007, recorded with the Washoe County recorder as document

3550177 on that same date ("ELP Deed of Trust B"). The ELP  Deed of Trust B is a first

deed of trust by recording date encumbering APNs 163-050-22 and 163-050-23.  These two

parcels total 3.79 acres and the Debtor has scheduled the value of those parcels at

$7,318,000.  Under the terms of a forbearance agreement, Kubinski and Topol pay $7,000

per month as interest on this loan.

### ELP Capital Loan C

ELP is the original payee on a promissory note dated February 1, 2009 in the

original amount of $3,500,000 ("ELP Note C").   Repayment of the ELP Note C is secured

by a deed of trust dated February 1, 2009 and recorded with the Washoe County recorder as

document 37277081 on February 5, 2009 ("ELP Deed of Trust C"). The ELP Deed of Trust

C is a second deed of trust by recording date encumbering all APNs.

### Heritage Bank of Nevada

Heritage Bank of Nevada ("Heritage") is the payee on a promissory note dated June

1, 2006 in the original amount of $250,000 ("Heritage Note").  The initial interest rate on

the Heritage Note is 9.5% and is subject to change based upon the prime rate index as

described in the Heritage Note, plus 1.5%. Through a series of Change In Terms

Agreements, the loan maturity date was extended to October 14, 2010.  Repayment of the

1   Heritage Note is secured by a deed of trust recorded February 19, 2009 as document

2   3731249 in Washoe County, Nevada. ("Heritage Deed of Trust").  The Heritage Deed if

3   Trust is in second position by recording date as to APNs 163-050-24, 163-050-25, 163-050-

4   26, 163-050-27 and 163-050-28 and by in third position, by recording date, as to APNs 163-

5   050-14, 163-050-19, and 163-050-22.  The current balance due under the Heritage Note is

6   $248,119.

7                          **Reno Land and Cattle, LLC**

8          Reno Land and Cattle, LLC ("RLC") is the original payee on a promissory noted

9   dated August 31, 2006 in the amount of $395,065 ("RLC Note").  Repayment of the RLC

10   Note is secured by a Deed of Trust dated August 31, 2006 and recorded as document

11   3436216 in Washoe County on September 8, 2006 ("RLC Deed of Trust").  The RLC Deed

12   of Trust is a first deed of trust by recording date encumbering APN 163-050-20

13   approximately .41 acres in size.  The current balance due under the RLC Note is $82,000.

14

15          **Unsecured Liabilities**

16

| | |
|---|---:|
| SMC | $  200,000 |
| A J Kirkwood | 200,000 |
| Martin Iron Works | 100,000 |
| RHP Mechanical | 200,000 |
| Steve Johnson | 2,300 |
| Todd & Associates | 6,125 |
| Aspen Mechanical | 29,145 |
| Ferrari Shields | 48,320 |
| JP Electric | 21,880 |
| REC Civil | 11,980 |
| Townley | 400 |
| WY Landscape | 6,420 |
| Vern Martin | 2,935 |
| Tim Ward | 80,000 |
| Ray Pezzonella | 23,000 |
| Nevada Security Bank | 250,000 |
| Dave Davis | 2,000 |
| John Collier | 500 |
| Pat Pinjuv | 23,000 |
| Steve Smith | 900 |
| Kyle Collingsworth | 200 |
| ISL | 1,000 |
| Renown Hospital | 15,000 |
| Stoel Rives | 5,100 |
| Wendy Simmons | 200 |
| South Meadows BOA | 16,961 |

Caryn Swob                    200
                          $1,246,566

## VII.    EXECUTORY CONTRACT

MT3 is a party to a license agreement with Starwood Four Points By Sheraton.  On the Effective Date, MT3 intends to assume the license agreement.  MT3 anticipates that Starwood will consent to the assumption.

## VIII.   PLAN OF REORGANIZATION

**The following is a summary of the Plan, subject to change, which will be proposed by MT3 following approval by the Court of this Disclosure Statement and any modifications thereto.  Creditors should not rely upon this summary for voting purposes.**

**ADMINISTRATIVE EXPENSES AND UNCLASSIFIED CLAIMS**

The Debtor will be obligated to pay the attorneys' fees and costs owed to Hartman & Hartman, subject to Court approval.  An estimate of the expected fees and costs is unknown at this time.

Any unpaid fees required pursuant to 28 U.S.C. § 1930 will be paid in full on the Effective Date of the Plan.

**CLASSIFICATION OF CLAIMS AND STATEMENT OF IMPAIRMENT**.

The Plan places creditors' claims, and interests, exclusive of administrative creditor claims into 8 classes.  Those are:

**Class 1: Washoe County**

As of the Petition Date, the claim of the Class 1 creditor is $243,742.

The Class 1 claim is impaired.

**Class 2**:  **Nevada State Bank**

As of the Petition Date, the claim of the Class 2 creditor was approximately $7,886,000. The Class 2 claim is impaired.

///

///

1    **Class 3**:  **ELP Capital Loan A**

2    As of the Petition Date, the claim of the Class 3 creditor was approximately

3    $7,675,000.  The Class 3 claim is impaired.

4    **Class 4**:  **ELP Capital Loan B**

5    As of the Petition Date, the claim of the Class 4 creditor was approximately

6    $6,060,000.  The Class 4 claim is impaired.

7    **Class 5:  ELP Capital Loan C**

8    As of the Petition Date, the claim of the Class 5 creditor was approximately

9    $3,500,000.  The Class 5 claim is impaired.

10    **Class 6:   Heritage Bank**

11    As of the Petition Date, the claim of the Class 6 creditor was approximately

12    $260,000.  The Class 6 claim is impaired.

13    **Class 7: Reno Land and Cattle**

14    As of the Petition Date, the claim of the Class 7 creditor was approximately

15    $89,380.  The Class 7 claim is impaired.

16    **Class 8: Unsecured Creditors**

17    As of the Petition Date, the claims of the Class 8 creditors totaled

18    $1,246,566.  The Class 8 claims are impaired.

19    **Class 9: Equity**

20    The membership interests are equally held by Mark Kubinski and Tami

21    Topol.

22                **TREATMENT OF CLASSIFIED CLAIMS UNDER THE PLAN**.

23    **Class 1**: Payment of accrued, pre-petition real property taxes will be in

24    four installments of $60,936 on January 12, 2012, March 31, 2012, June 30, 2012 and

25    September 30, 2012.

26    **Class 2**: Post petition, interest will accrue at the rate of 4.5% annually.

27    Monthly payments of interest at 4.5% on the unpaid principal balance will commence on

28    January 12, 2012.  On September 30, 2012, NSB will receive a principal reduction in the

amount of $1,250,000 in exchange for a partial release of specified collateral.  The collateral to be released is .85 acres on which the Casitas phase of the project is to be developed.

**Exhibit C.**  Interest payments will continue on the reduced principal until the balance due, including any fees and costs incurred under the terms of the NSB Note, is satisfied in full on January 3, 2015.  In the event there is a differential in the interest rate of 4.5% and the rate as calculated under the terms of the NSB Note, i.e., the NSB Note calculation is greater than 4.5%, the differential will be included in the payoff demand, and paid, at January 3, 2015.

        <u>Class 3</u>:  Post petition, interest will accrue at the rate of 4.5% annually. Monthly payments of interest at 4.5% will commence on January 12, 2012.  In addition, on January 12, 2012, ELP A will receive a principal reduction in the amount of $1,918,750. Interest will accrue on the unpaid balance at 4.5% with principal reductions of $1,918,750 on March 31, 2012, June 30, 2012 with a final payment on September 30, 2012 together with any unpaid interest, attorneys fees and costs due under the terms of the ELP Note A. The differential in the interest rate of 4.5% and the rate as calculated under the terms of ELP Note A will be included in the payoff demand, and paid, at September 30, 2012.

        **Class 4:**  Interest will accrue at 4.5% and the ELP Note B will be fully due and payable on January 3, 2015.

        **Class 5:** The entire principal balance and unpaid interest shall be payable on a partial release arrangement based upon each acre within the Boulevard South project being funded relative to the total acres within the total project collateralized.  The loan will be subordinated to the construction loan financing for the first phase only.

        **Class 6:** Monthly payments of interest at 4.5% will commence on January 12, 2012.  In addition, on January 12, 2012, Heritage will receive a payment of $65,000. Interest will accrue on the unpaid balance at 4.5% with payments of $65,000 on March 31, 2012 and June 30, 2012 with a final payment of $65,000 on September 30, 2012, together with any unpaid interest, attorneys fees and costs due under the terms of the Heritage Note.

        **Class 7:** Monthly payments of interest at 4.5% will commence on January 12, 2012.  In addition, on January 12, 2012, Reno Land and Cattle will receive a payment of

$22,345.  Interest will accrue on the unpaid balance at 4.5% with principal reductions of $22,345 on March 31, 2012, June 30, 2012 with a final payment of $2,345 on September 30, 2012, together with any unpaid interest, attorneys fees and costs due under the terms of the Reno Land and Cattle Note.

**Class 8:** Class 8 creditors will be paid according to the schedule attached as **Exhibit D**.  Class 8 creditors will not receive interest but will be paid in full no later than September 30, 2012.

**Class 9:** Equity interest holders will retain their membership interests in the Debtor and will not receive any return on equity until all creditors are paid in full.

## IX.    LIQUIDATION ANALYSIS

If the various secured creditors are permitted to foreclose their respective security interests, there will be no monies available to pay unsecured creditors.

## X.    DEFAULT

In the event of a default in failure to pay interest payments due to any Class commencing in January 2012, the secured creditor to which payments are due will, after 30 business days written notice, be permitted to commence foreclosure under applicable state law.

## XI.    REQUIRED VOTES

11 U.S.C. § 1126(c) PROVIDES THAT A CLASS OF CLAIMS ACCEPTS A PLAN IF ACCEPTED BY CREDITORS HOLDING TWO-THIRDS IN AMOUNT AND ONE-HALF IN NUMBER OF ALLOWED CLAIMS OF SUCH CLASS HELD BY CREDITORS THAT HAVE ACCEPTED OR REJECTED THE PLAN.

IN THE EVENT THAT THE PLAN IS NOT ACCEPTED BY ALL CLASSES OF CREDITORS OR ALL CLASSES OF INTERESTS, BUT IS ACCEPTED BY ONE NON-INSIDER CLASS, THE DEBTOR WILL REQUEST CONFIRMATION OF THE AMENDED PLAN IN ACCORDANCE WITH THE PROVISIONS OF 11 U.S.C. § 1129(b).

As stated, one criterion for confirmation of the Plan by the Bankruptcy Court is the

1  requisite acceptance of the Plan by each impaired class of claimants or interest holders.

2  Together with this Plan, a Ballot for the purpose of voting on the Plan will be forwarded to

3  each creditor who has timely filed a Proof of Claim to which no objection has been filed or

4  whose claims were scheduled by the Debtor as not disputed, contingent or unliquidated.

5  The ballot of a creditor, if any, whose claim is the subject of a pending objection is so

6  indicated; such creditors will not be entitled to vote on the Plan to the extent that their

7  claims are subject to dispute unless an Order allowing such claims is entered by the

8  Bankruptcy Court.

9         After approval of a Disclosure Statement, in order to accept or reject the Plan, each

10  creditor must execute a ballot in accordance with the instruction contained therein and

11  return the same so as to be received by the Ballot Date to:

12                          **HARTMAN & HARTMAN**

13                          510 West Plumb Lane, Suite B
                            Reno, Nevada 89509

14

15     **XII.   CONFIRMATION OF THE PLAN.**

16         To confirm the Plan, the court must, after notice, hold a hearing on confirmation.  A

17  party in interest may object to confirmation of the Plan and appear at the confirmation

18  hearing to prosecute such objection.  Confirmation of the Plan is contingent upon

19  satisfaction of the requirements of 11 U.S.C.§ 1129.  If the Plan is confirmed, any

20  previously recorded Notice of Default or Notice of Trustee's Sale will be rescinded

21     **XIII.   POST-CONFIRMATION MATTERS**

22         If the case has not been closed, Debtor will file its first post-confirmation report 90

23  days following Plan Confirmation and every 180 days thereafter until this case is closed.

24  Pursuant to 28 U.S.C. § 1930(a)(6), quarterly fees which are due post-confirmation will be

25  paid until such time as the case is closed.

26     **XIV.   MISCELLANEOUS PROVISIONS**

27         1.     Effect of Confirmation:  Upon confirmation of the Plan, the Debtor shall be

28  discharged from any and all debts to the full extent permitted by 11 U.S.C. § 1141.  In

1  addition, pending execution of the Plan, and unless the Court has expressly ordered

2  otherwise, all entities are stayed from proceeding against the Debtor or its property.  Subject

3  to the provisions of the Plan, all property of the bankruptcy estate shall revest in the Debtor

4  upon confirmation pursuant to 11 U.S.C. § 1141.

5      2.    <u>Plan Modification</u>: Debtor has the right to modify this Plan in accordance

6  with the provision of the Bankruptcy Code before and after confirmation.

7      **XV.    <u>RETENTION OF JURISDICTION</u>**

8      The Court shall retain the full extent of jurisdiction conferred by 28 U.S.C. § 1334

9  for any necessary purposes pursuant to Federal Rule of Bankruptcy Procedure 3020(d),

10 including without limitation, the adjudication of all controversies arising out of the

11 classification or allowance of any claim or interest.

12     **XVI.   <u>MISCELLANEOUS PROVISIONS</u>**

13     Debtor may propose amendments or modification of this Plan anytime prior to the

14 Confirmation Date with leave of the Court upon notice to creditors.  After Confirmation of

15 the Plan, the Plan proponents may, with the approval of the Court and so long it does not

16 materially or adversely affect the interest of the creditors or investors, amend the Plan to

17 remedy any defect or omission or reconsider any inconsistencies in the Plan or in the Order

18 of Confirmation in such manner as may be necessary to carry out the purposes and effect of

19 the Plan.

20     **XVII.  <u>CONCLUSION</u>**

21     This information has been provided for the purposed of enabling you to make an

22 informed decision on whether to vote in favor of accepting the Plan.  Debtor believes

23 acceptance of the Plan is in the best interest of all creditors and that confirmation will

24 provide the greatest possible recovery for creditors.

25  Dated this 18th day of February, 2011.

26

27     **HARTMAN & HARTMAN**

28     <u>  /S/ Jeffrey L. Hartman     </u>
       Jeffrey L. Hartman, Esq. for
       MT3 Partners, LLC