# EXHIBIT B



February 7, 2011

Mr. Mark Kubinski
Bordeaux Communities, LLC
146 West 57th Street, #67A
New York, NY, 10009

Re:    Commitment to provide EB-5 Equity Funding of $114,150,000 for Bordeaux Communities, LLC, a Senior Housing Project in Reno, Nevada ("Bordeaux")

Dear Mr. Kubinski:

Based on our review of the market studies, appraisals, financial projections and development team for your master development in Reno, Nevada, Resolute Capital Partners, LLC, ("RCP"), on behalf of Sierra Nevada Regional Center [1] ("SNRC"), is prepared to issue this Commitment to Bordeaux Communities, LLC (the "Funded Business, or FB"), to provide development, construction and permanent financing ("Funding") to the FB for the purpose of developing the Property known as "Bordeaux Communities", subject to the terms and conditions herein.

## FINANCING STRUCTURE

**Funded Business:** The Funded Business shall be Bordeaux Communities, LLC, unless approved and amended otherwise by RCP.

**Facilitator:** Resolute Capital Partners shall facilitate the Funding through the Sierra Nevada Regional Center, LLC. RCP shall represent Investor with respect to any and all matters related to the underwriting, due diligence, documentation, and closing of the Funding.

**Investor:** A Limited Liability Company shall be formed for the strict purpose of investment in the Funded Business.

**The Property:** Bordeaux Communities consists of various Projects and entails the development of 10 parcels of land totaling 16.21 acres, located in the South Meadows area in Reno, NV (the "Property"). FB intends to utilize the funds from Investor in the amount of $114,150,000 to develop the Property. Subject to FB and RCP approval, the Property may be extended to include properties in "Lakeridge", "Somersett" and "Minden".

**Projects:** Each Project within "Bordeaux Communities" shall be a SPE (Single Purpose Entity) which receives funds from the Funded Business; at all times, each Project shall remain a "single-purpose entity", which requirement shall mean that FB (i) shall not engage in any business other than the ownership, management and

operation of the respective Project, (ii) shall not own or hold any assets other than the respective Project, (iii) not enter into or incur any secured or unsecured financing (except for the Funding and as set forth in the paragraph below entitled "Additional Financing"), (iv) not guaranty or be liable for or in connection with any obligation of any other person or entity other than the Funding, (v) not pledge its assets for the benefit of any other person or entity and (vi) shall comply with all other similar terms and conditions set forth in the Funding Documents.

**Total Funding(s):** U.S. One Hundred Fourteen Million One Hundred Fifty Thousand and no/100 Dollars ($114,150,000).

**Funding Purpose:** Funding proceeds shall be used to finance each of the Projects, which Projects shall be a job-creating commercial enterprise, as defined by the EB-5 Immigrant Investor Program.

**Investment Term:** Five (5) years from the date of closing of each respective Funding tranche.

**Interest Rate:** 6.5%, interest-only, payable monthly from net operating income.

**Origination Fee:** Two percent (2%) of the Gross Funding Amount, payable at Funding closing.

**Maximum Funding:** 100% of all Project Costs including land determined at Fair Market Value based on its intended use.

**Equity Requirement:** No equity is required by FB at closing. At maturity of the Investment Term, RCP shall be paid in cash 50% of the difference between the fair market value (based on an MAI appraisal) or sale of the Project and the amount of the total project cost (including land and indebtedness).

**Prepayment:** Neither a partial or full payment of the Funding may be made prior to the expiration of the Term.

**Funding Assumption:** The Funding shall be due and payable in full upon any transfer or sale of the real property underlying the respective Project, or any ownership interest in FB greater than a 50% interest, subject to the additional Equity Requirement provision.

**Security; Collateral:** The Funding shall be secured by (i) a first priority deed of trust on the respective portion of the (real) Property underlying each Project, (ii) UCC-1 Liens on all personal property, equipment and fixtures, (iv) a first priority pledge of 100% of the ownership interests in FB and (v) a first priority pledge of the Reserves (if any).

In addition, RCP will require Reserves with respect to real estate taxes and insurance. All Reserves shall be deposited with a bank approved by RCP. Interest accrued on the Reserves shall be for the benefit of FB.

**Application Fee:** $165,000 payable to Resolute Capital Partners, LLC (or other designee as Facilitator requires) shall be due upon acceptance of this Commitment.

The Commitment fee shall be considered fully earned and is non-refundable.

2

| | |
|---|---|
| **Expense Deposit:** | $54,000 payable to Resolute Capital Partners, LLC (or other designee as Facilitator requires) at the time of this Commitment. Whether or not the Funding contemplated herein closes, FB shall be obligated to pay all of Facilitator's travel-related expenses associated with raising of funds for the Funding; said expenses shall be paid in advance by FB prior to each trip. Additionally, FB shall be responsible for paying for all third-party expenses associated with the underwriting and closing of the Funding, including appraisal, underwriting, escrow, title, and any legal fees associated with the documentation and closing of the Funding. |
| **Other Lender Fees:** | Shall include but are not limited to the following fees:<br>Loan Loss Reserve Fee: Included in Commitment Fee<br>Loan Servicing Fee: Included in Commitment Fee |
| **Legal Counsel:** | The interests of the FB and Facilitator and/or Investor are or may be different and may conflict, and the Facilitator and/or Investor's attorney solely represents the interest of the Facilitator and/or Investor. It is advised and requested that the FB employs an attorney of its own discretion, to represent the interests of the FB. |
| **Recourse:** | The Funding is non-recourse to the Funded Business. |
| **Funding Date:** | The anticipated initial Funding of $51,725,000 shall be on July 31, 2011 so that construction can begin on the first phase. In no event, shall such Funding commence later than: |

- January 1, 2012 in the amount of $20,588,000;
- March 31, 2012 in the amount of $15,850,000;
- June 30, 2012 in the amount of $7,534,000, and
- Sept 30, 2012 in the amount of $7,753,000.

The remaining undisbursed Fund balance of $62,425,000 shall be paid as development of the Projects progress but no later than Jan 1, 2015, subject to satisfaction of conditions by Facilitator.

**Conditions prior to Funding:**

- Copies of Final completed Architectural Drawings, Plans and Specifications;
- Copy of executed Fixed Price Construction Contract;
- Final Construction Cost Breakdown, including Hard and Soft Costs;
- Final Construction Timeline and Draw Request Timeline;
- Final List of Contractors as well as copies of all third party contracts, including the architect's contract, the construction manager's contract, the general contractor's contract and all subcontractor's contracts; Final Survey of the Property certified to Investor, the title insurer and such other parties as may be designated by Facilitator, showing any lot line adjustments contemplated for the Projects. The survey shall be prepared in accordance with current ALTA Standards and shall contain such certifications as may be required by Facilitator, and in any event be in all respects acceptable to Facilitator.

3

**Additional Financing:** At all times during the term of the Funding, FB shall not enter into or incur any secured or unsecured financing other than the Funding. No corporate general partner or managing member of FB may incur any secured or unsecured financing or issue any new or additional stock or other equity interest in such general partner/managing member or permit the sale, transfer, pledge or encumbrance of any such stock or other equity interest in such corporate general partner or managing member.

**Additional Encumbrances:** At all times during the term of the Funding (i) FB shall not further encumber the Property, and (ii) no partner or other owner of a partnership or other ownership interest in FB shall pledge, assign or otherwise transfer its partnership or other ownership interest in FB.

**Funding Documents:** All agreements, certificates and documents executed in connection with the Funding (the "Funding Documents") shall be prepared by counsel designated by Facilitator and shall be on such forms and contain such terms and provisions as shall be required by Facilitator in its sole discretion. The Funding Documents may include but are not limited to, the following: (i) a Funding agreement; (ii) a promissory note; (iii) a deed of trust and security agreement encumbering the Property; (iv) an assignment of leases and rents encumbering the property; (v) Uniform Commercial Code financing statements; (viii) opinions of counsel, in such form and content as Facilitator may require; (ix) such other assignments, escrow agreements, certificates, and other documents as Facilitator may require in its sole discretion to evidence or secure the Funding. FB shall provide reports to Facilitator on a monthly basis as set forth in the definitive Funding agreement relating to the financial condition of the FB.

**Third Party Control:** FB shall permit and pay for third party inspections at times required by Facilitator throughout the Funding term; FB shall permit and pay for a third party construction control company to manage draw requests and disbursements according to Facilitator-approved guidelines.

**Insurance:** FB shall maintain at all times, at FB's sole cost and expense, paid-up policies of liability or other insurance which may be required by Facilitator under the Funding Documents. All insurance shall be maintained with responsible and reputable insurance companies or associations satisfactory in all respects to Facilitator. Each policy of insurance shall name Investor as additional insured or loss payee and shall include mandatory 30-day written notice to Investor of any modification or cancellation of any such policies.

**Organizational Documents:** FB shall provide Facilitator all corporate, partnership or membership resolutions, certificates of incumbency, certificates of good standing, shareholder consents, certified copies of partnership agreements, operating agreements, articles of incorporation, bylaws, and such other organizational documents and evidence of authority and consent as Facilitator may require. All such documents and certificates shall be satisfactory to Facilitator in its sole discretion.

**Title Insurance:** Facilitator shall order at FB's sole cost and expense, one or more policies of mortgagee's title insurance, or "marked-up" binding commitments for mortgagee's title insurance, from a title insurance company, and on an ALTA form of title policy, acceptable to Facilitator in its sole discretion. Each such policy or

4

|  |  |
|---|---|
|  | commitment shall (i) name Investor and such other parties as may be designated by Facilitator as the insured parties, (ii) be in the final amount of the Funding, (iii) insure that the lien of each mortgage and security agreement is a first priority lien on the Property subject only to (a) real estate taxes not yet due and payable and (b) covenants, conditions, restrictions, rights of way and easements acceptable to Facilitator, (iv) insure that the Property has direct pedestrian and vehicular access to a publicly dedicated, constructed road, (v) contain such endorsements and affirmative coverage as may be required by Facilitator, and (vi) in any event be in all respects acceptable to Facilitator in its sole discretion. |
| **Property Status:** | FB shall provide Investor at the times required under the Funding Documents, at FB's sole cost and expense, (i) copies of permits, licenses or other evidence satisfactory to Investor demonstrating compliance with current zoning, building, health, environmental and other rules, regulations, ordinances and laws applicable to the Property and the use thereof and all covenants and restrictions applicable to the Property, (iii) evidence satisfactory to Investor that (a) public utilities are available and serve the Property with sufficient capacity and (b) the Property has direct pedestrian and vehicular access to a publicly dedicated, construed road. |
| **Indemnification:** | FB hereby agrees to protect, defend, indemnify, release and hold harmless RCP and SNRC and their respective affiliates, officers, employees, agents and other representatives for, from and against any and all claims, suits, liabilities, losses, costs, expenses (including reasonable attorneys' fees and costs) imposed upon or incurred by or asserted against any indemnified party arising out of or relating to the Property or Projects, this letter or the transactions contemplated thereby, except for those arising out of the willful misconduct or gross negligence of Facilitator. This indemnification provision shall survive the expiration or termination of this letter, but shall not survive the execution of definitive Funding documents. |
| **Counterparts and Facsimile Signatures:** | This letter may be executed in 2 or greater counterparts. Execution and delivery of this letter may be made by facsimile, email or PDF. |
| **Assignment:** | The provisions of this letter may be amended or modified only upon the written consent of each of the parties hereto. This letter may not be assigned by either the FB or RCP, without approval of both the FB and RCP. |
| **Governing Law:** | This letter shall be governed by the laws of the State of Nevada. |
| **Confidentiality:** | The Funded Business, on its own behalf and on behalf of its affiliates and representatives agree to treat this letter and the information contained in this letter, including the terms and conditions of the Funding, in a confidential manner and shall not disclose such information without Facilitator's prior written consent. |
| **Priority of Funding:** | RCP has a prioritized order of potential fundings. The financing in the amount of $114,150,000 to Bordeaux Communities, LLC is 1st in line on RCP's priority of fundings. Borrower may direct such funds to certain phases within Bordeaux Communities as it deems necessary to carry out a feasible and profitable development phasing plan. |

5

**Liquidated Damages:** The Funded Business acknowledges that, by having performed its due diligence investigation to date and by issuing this Commitment, RCP has and is devoting substantial time and resources to FB that it otherwise could devote to other projects. Therefore, if FB terminates this letter agreement prior to fund raising having commenced by RCP, FB will forfeit $50,000 as liquidated damages, in favor of RCP, in addition to any expenses covered by FB on behalf of RCP pursuant to this letter agreement. If RCP has commenced fund raising, FB will, in addition to the liquidated damages, be responsible for covering costs incurred by RCP for the fund raising efforts, including travel and fees paid to 3rd parties in the securing of the funds.

The Funded Business acknowledges and agrees that (i) the terms outlined above regarding the Funding are subject to legal review and documentation satisfactory to Facilitator; (ii) the terms and conditions for the Funding which are outlined in this letter do not necessarily include all of the material terms and conditions which will be required in the documentation of the Funding; and (iii) Funding is subject to finalization of the Sierra Nevada Regional Center; (v) Funding is subject to final foreign investor acceptance of Project documentation.

You may accept the terms of this letter by executing this letter in the space provided below and returning such executed copy to the undersigned either in person or via facsimile at (775) 636-8263. This letter shall expire, if it is not previously accepted, on Friday, February 11, 2010 at 5:00pm (PST).

Thank you again for the opportunity to work with you on this financing.

Sincerely,

Marcy Olson
Senior Underwriter/Portfolio Manager
**Resolute Capital Partners**

AGREED & ACKNOWLEDGED
Bordeaux Communities, LLC

By: Mark Kubinski

6